# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2022

Lyle W. Cayce
Clerk

No. 21-20010

_____

Eric Demond Lozano,

*Plaintiff—Appellant*,

*versus*

Deborah L. Schubert, *Kitchen Captain, Texas Department of Criminal Justice*; Robert D. Herrera, *Head Warden, Texas Department of Criminal Justice*; Paul B. Wilder, *Assistant Warden, Texas Department of Criminal Justice*; David E. Nichols, *Chaplin, Texas Department of Criminal Justice*; Amy Oliver, *Grievance Coordinator, Texas Department of Criminal Justice*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1183

_____

Before Higginson, Willett, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Eric Demond Lozano, Texas prisoner # 1915276, filed a civil rights complaint under 42 U.S.C. § 1983 against various employees of the Texas Department of Criminal Justice (TDCJ) who worked at the Wallace Pack Unit, a state prison near Navasota, Texas. Lozano, who is Muslim, alleges that when he was evacuated from the Stringfellow Unit (a state prison in

No. 21-20010

Otey, Texas) to the Wallace Pack Unit due to Hurricane Harvey, he was not provided with kosher meals, even though such meals were received by similarly situated Jewish inmates. The district court granted the defendants' motion for summary judgment. We REVERSE and REMAND.

I.

Lozano's complaint alleges the following relevant facts. On August 26, 2017, Lozano and other Stringfellow Unit inmates were evacuated to the Wallace Pack Unit due to Hurricane Harvey. Upon arrival, Lozano was informed that the Wallace Pack Unit did not serve kosher food. However, he subsequently learned that Jewish inmates who had been evacuated with him were receiving kosher meals. When Lozano inquired about whether he could be provided with kosher meals, explaining that he did not eat the regular prison meals because of his religious beliefs and that kosher meals, which satisfy the dietary precepts of his Islamic faith, had been served to him at the Stringfellow Unit, the head warden of the Pack Unit, Robert Herrera, allegedly asked him, "When do Muslims eat with Jews?" Herrera also allegedly said, "We don't do kosher here. You are on survival mode." David Nichols, a TDCJ chaplain, allegedly explained to Lozano, "I have a list of all Jewish offenders and you are not on the list. . . . I can't help you." Deborah Schubert, the kitchen captain, allegedly said, "Well you're not on the Jewish list, so I can't help you." Assistant Warden Paul Wilder allegedly told Lozano, "Muslims don't eat Jewish food. I can't help you. . . . You should have been a Jew." Lozano suffered from physical and mental distress as a result of his being unable to eat kosher meals, losing 14 pounds and experiencing depression and suicidal ideation. He started receiving kosher meals on September 21, 2017, after he was transferred to the Leblanc Unit.

The district court initially dismissed Lozano's complaint with prejudice. The court first determined that collateral estoppel barred Lozano

from raising a claim under the First Amendment's Free Exercise Clause. The district court then found that "the kosher meals were donated by third parties to the Jewish inmate evacuees," and it accordingly concluded that Lozano had failed to state a claim under the Fourteenth Amendment's Equal Protection Clause, reasoning that because the meals "were not directly supplied or prepared by prison officials, plaintiff's allegations raise no viable equal protection claim."

On appeal, we affirmed the dismissal of Lozano's Free Exercise claim. *See Lozano v. Shubert*, 770 F. App'x 687, 687-88 (5th Cir. 2019) (per curiam) (unpublished). However, we vacated the district court's dismissal of Lozano's Equal Protection claim, determining, based on "Lozano's allegations in his brief on appeal," that "[i]t is possible that Lozano has pled or could plead an Equal Protection claim." *Id.* at 688-89. We further stated that "[e]ven if the allegations in Lozano's complaint do not state a claim under the Equal Protection Clause," the district court improperly "denied Lozano an 'adequate opportunity to cure the inadequacies in his pleading'" by dismissing his complaint with prejudice. *Id.* at 689 (citation omitted).

The case was remanded to the district court on June 14, 2019. On June 20, Lozano filed a motion to amend his complaint. However, the district court denied the motion as "moot" on June 21, for the stated reason that "[n]o proposed amended complaint was submitted for the Court's review." On August 13, Lozano filed a motion for the appointment of counsel, which the district court denied without prejudice the following day.

On September 17, the defendants filed an answer to Lozano's original complaint. In his reply to the answer, which he filed on October 3, Lozano reiterated the allegations that he had made in his original complaint and also asserted several new allegations: that a temporary kosher kitchen was established in the Wallace Pack Unit bakery during the evacuation; that the

No. 21-20010

defendants had brought some kosher food from the Stringfellow Unit to the Wallace Pack Unit; that the defendants denied him access to TDCJ-bought foods that the Jewish inmates were able to eat; and that when he and the other Stringfellow inmates were later transferred to the LeBlanc Unit, he was able to eat the same privately-donated kosher food that he had been denied at the Wallace Pack Unit. Lozano attached to his response declarations from two Jewish inmates stating (1) that Lozano was denied access to non-donated kosher foods while at the Wallace Pack Unit and (2) that at the LeBlanc Unit, Lozano was able to eat the donated kosher food that he had been denied at the Wallace Pack Unit.

On January 15, 2020, the defendants moved for summary judgment. Assistant Warden Wilder submitted an affidavit in support of the motion, in which he testified as follows:

> On August 26, 2017, offenders housed at the Stringfellow unit in Rosharon, Texas were evacuated to the Wallace Pack unit in Navasota, Texas due to Hurricane Harvey. Since the Stringfellow Unit is an enhanced Jewish-designated unit, many of the evacuated offenders were Jewish and required Kosher meals. The Wallace Pack unit does not have a Kosher kitchen so originally the evacuated offenders did not receive Kosher meals. Soon thereafter, Rabbi Goldstein and his affiliates delivered pre-packaged Kosher meals that were donated. These donated Kosher meals came with a list of Jewish offenders who were to receive the meals.

> I have the responsibility of making sure donated meals are not averse to the TDCJ's security concerns. When it comes to approved donated meals the TDCJ treats the donated food as belonging to the person or persons to whom the donation is intended, and the TDCJ does not interfere in the receipt of the donated food as long as it is deemed safe for receipt within the unit. I did not create the list of offenders who would receive the meals. We merely followed the instructions of Rabbi Goldstein

4

No. 21-20010

concerning how the meals were to be stored, handled, and distributed. Only offenders who were on the list provided by Rabbi Goldstein could receive the donated Kosher meals. This excluded offender Eric Lozano, any other evacuated offenders not on the list, and any offender on the unit who identified as Jewish. Prior to the evacuation, the Wallace Pack unit did not have any Jewish offenders that required a Kosher diet. The TDCJ meal plans provide meat-free and pork-free options to all offenders that can and do meet many religious restrictions concerning meat consumption. Ultimately, when the Stringfellow offenders transferred out of the Wallace Pack unit the donated Kosher meals did not remain at the Wallace Pack unit.

Rabbi David Goldstein also submitted an affidavit in support of the motion. Goldstein explained that he was "under contract with the [TDCJ] to serve as the Department's head rabbi," and he testified as follows:

Due to the devastation in Texas caused by Hurricane Harvey, the TDCJ inmates at the Stringfellow Unit in Rosharon, Texas were evacuated to the Wallace Pack Unit in Navasota, Texas on August 26, 2017. During the month of August, I was running the distribution of donations for Chabad Harvey Relief in the Houston area. I received donated pre-packaged Kosher meals from organizations in Chabad Harvey relief to be donated only to Jewish inmates affected by Hurricane Harvey. I did not influence, have authority, or aid in the creation of making these restrictions concerning the donated Kosher meals. On August 28, 2017, I brought these donated Kosher meals to the Wallace Pack unit and provided a list of Jewish offenders that were going to receive the meals. I created this list based off the Jewish offenders at the Stringfellow unit who were evacuated to the Wallace Pack unit due to Hurricane Harvey. I instructed the Wallace Pack unit Warden, Assistant Warden, Kitchen captain, and unit chaplain on how to handle, store, and distribute the meals to keep them Kosher. The Pack unit does

not have a Kosher kitchen, which is why these meals were being donated for these evacuated Jewish offenders.

The district court granted the summary judgment motion. The court noted that Lozano had never submitted an amended complaint, and it explained that it could not consider any new allegations that Lozano had presented in his response to the defendants' motion for summary judgment.[1] The court then found, based the affidavits of Wilder and Goldstein, that "the kosher meals were donated by third party donors and earmarked by the donors for the Jewish inmate evacuees," and it concluded, based on this finding, that "no equal protection violation is shown."

Lozano filed a motion for reconsideration, which the district court construed as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and denied. Lozano appealed.

## II.

Lozano argues that the district court erred by not giving him an opportunity to cure the inadequacies in his complaint. Given our court's prior remand, we agree.

When this case was previously before us, we vacated the district court's dismissal with prejudice of Lozano's Equal Protection claim. We explained that, given "Lozano's allegations in his brief on appeal," "[i]t is possible that Lozano has pled or could plead an Equal Protection claim." *Lozano*, 770 F. App'x at 688. Significantly, we stated that "[e]ven if the allegations in Lozano's complaint do not state a claim under the Equal Protection Clause," the district court improperly "denied Lozano an 'adequate opportunity to cure the inadequacies in his pleading'" because it

---

[1] The court did not address whether it could consider the new allegations that Lozano had presented in his reply to the defendants' original answer.

No. 21-20010

"did not notify Lozano before it dismissed his claim with prejudice." *Id.* at 689 (citation omitted). We highlighted that Lozano "was not given notice and an opportunity to amend his complaint, he was not given a questionnaire, and he was not afforded a *S[p]ears* hearing." *Id.*[2] We explained that "with the benefit of more specific allegations, Lozano may be able to state a claim against one or more of the defendants for violating his right to equal protection." *Id.* (cleaned up).

In short, because we concluded that Lozano may have a plausible claim that his constitutional rights had been violated, we instructed the district court to make sure that, on remand, Lozano had an "adequate opportunity to cure the inadequacies in his pleading," despite his status as a pro se litigant. *Id.*; *cf. Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980) ("[W]e must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations."); *United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) ("To penalize Riascos for less-than-perfect pleading is a clear violation of the rule that courts must liberally construe *pro se* pleadings.").

"[A] lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012). However, after we remanded the case to the district court, Lozano did not receive either a *Spears* hearing[3] or a questionnaire, and, when Lozano moved to amend his complaint, the district court denied the motion,

---

[2] *See also Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 423 (5th Cir. 2017) ("The principal vehicles which have evolved for remedying inadequacy in prisoner pleadings are the *Spears* hearing and a questionnaire to bring into focus the factual and legal bases of prisoners' claims.")

[3] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

stating in full, "Plaintiff's letter requesting leave to amend his complaint in this *pro se* state inmate lawsuit (Docket Entry No. 20) is DENIED AS MOOT. No proposed amended complaint was submitted for the Court's review." Thus, the record does not reveal any action taken to enable Lozano to cure the deficiencies in his pleadings. By not giving Lozano an opportunity to cure the inadequacies in his complaint though a *Spears* hearing, a questionnaire, an amended complaint, or some other method, the district court did not adhere to our court's mandate.

The district court offered an explanation for its handling of the case on remand in its order denying Lozano's Rule 59(e) motion, stating that while Lozano "contends he was unaware" of the district court's requirement that a proposed amended complaint must be attached to a motion to amend, "the Court clearly informed plaintiff of this requirement in its order of April 23, 2018." The court further stated, "The Fifth Circuit's order of remand did not alter this requirement, nor did it expressly instruct the Court to order an amended petition, a more definite statement of the facts, or a *Spears* hearing." The district court offered a similar explanation in its summary judgment order, stating that "this Court . . . spelled out the steps plaintiff needed to consider on remand. . . . [T]his Court informed him that a motion for leave to amend his complaint required submission of a proposed amended complaint."

However, the district court read our mandate too narrowly. While we left the exact manner of curing the inadequacies in Lozano's complaint to the court's sound discretion, we instructed the district court to ensure that, on remand, Lozano had an "adequate opportunity to cure the inadequacies in his pleading." *Lozano*, 770 F. App'x at 689. The record indicates that the district court only explicitly "informed" Lozano of its requirement that a motion for leave to amend must be accompanied by a proposed amended complaint in its order of April 23, 2018, more than a year before the case was

remanded. The district court's above-quoted order denying Lozano's motion to amend as "moot" (which was issued in June 2019) also referred to this requirement, but the denial order did *not* "inform[]" Lozano that he was free to submit another motion to amend that complied with the requirement or otherwise "spell[] out" the steps that Lozano needed to consider on remand. For a pro se litigant, such a *denial* of a motion to amend is not, by itself, an "adequate opportunity to cure the inadequacies in his pleading." At a minimum, having denied Lozano's motion to amend, the district court should have construed Lozano's reply to the defendants' answer (which, as explained above, contained new allegations in addition to restating his original ones) as a proposed amended complaint, which it should have accepted. *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) ("[T]he court was required to look beyond the inmates' formal complaint and to consider as amendments to the complaint those materials subsequently filed."); *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991) ("Under the liberal construction given to pro se pleadings, the magistrate judge should have construed Cooper's reply to the defendant's new answer as a motion to amend the complaint."); *Vaughn v. Collins*, 8 F.3d 22 (5th Cir. 1993) ("The district court should have liberally construed Vaughn's 'response,' filed after responsive pleading by the respondent, as a request to amend, and granted it." (citation omitted)).[4]

---

[4] The district court correctly concluded in its summary judgment order that it could not consider the allegations that Lozano raised for the first time in his response to the defendants' summary judgment motion. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). However, as previously noted, the summary judgment order did not acknowledge the new allegations that Lozano raised in his reply to the defendants' answer, let alone explain why the court did not consider them.

III.

Lozano also argues that the district court erred by granting the defendants' motion for summary judgment. "We review a summary judgment *de novo*, 'using the same standard as that employed by the district court.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted).[5]

"The law of the case doctrine posits that ordinarily 'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" *Demahy*, 702 F.3d at 184 (citation omitted).[6] We laid out the legal standard that governs this case in Lozano's previous appeal:

> The district court . . . . read the pleadings as contending prison officials simply refused to divert meals earmarked for Jewish inmates to Muslim inmates like Lozano. That would not be a problem.
>
> But Lozano's allegations in his brief on appeal suggest a different situation—one where prison officials either had permission to share those donations with non-Jewish inmates, or had other non-donated foods they refused to furnish Lozano.

---

[5] For the reasons explained above, we will treat Lozano's complaint as having been amended by his reply to the defendants' answer.

[6] The "mandate rule," which we described and applied in the previous section, "is a 'specific application of the general doctrine of law of the case.'" *Demahy*, 702 F.3d at 184 (citation omitted).

> That *would* be a problem. Prison officials would be the source of discriminatory action if they refused to accept or distribute items otherwise available on equal terms.

*Lozano*, 770 F. App'x at 688.[7]

Lozano alleged in his reply to the defendants' answer that the defendants had non-donated kosher foods, including tuna, peanut butter, vegetables, beans, cereals, and TDCJ-purchased kosher meals, that they provided to Jewish inmates but not to him. Lozano also alleged that after he was transferred to the LeBlanc Unit, he was allowed to eat donated kosher foods, from which an inference can be drawn that TDCJ officials had permission to share donated kosher food with inmates not on the list of Jewish offenders. As evidence supporting these allegations, Lozano submitted declarations from two other inmates that corroborated his claims. Thus, at the very least, there is a genuine dispute of material fact as to whether "prison officials either had permission to share [the donated kosher meals] with non-Jewish inmates, or had other non-donated foods they refused to furnish Lozano." *Id.* Accordingly, summary judgment was inappropriate.[8]

---

[7] Under this court's rules, unpublished opinions issued on or after January 1, 1996 "are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5TH CIR. R. 47.5.4; *see also Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006). Accordingly, while the above statement of the state action doctrine is binding on this panel under the law of the case doctrine, it is not binding on subsequent panels. We need not opine on the previous panel's assertions that it "would not be a problem" for prison officials to "simply refuse[] to divert meals earmarked for Jewish inmates to Muslim inmates" and that "[t]here is no discriminatory state action where prison officials act as mere conduits for a transfer from a third-party outside of the prison to an inmate within its walls." *Lozano*, 770 F. App'x at 688 (5th Cir. 2019).

[8] Additionally, we note that Rabbi Goldstein testified that while he "did not influence, have authority, or aid in the creation of making [the] restrictions concerning the

No. 21-20010

IV.

Finally, Lozano challenges the district court's denial without prejudice of his motion to appoint counsel. He has also filed a motion for appointment of counsel with this court.

"A civil rights complainant has no right to the automatic appointment of counsel. The trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. § 1983 . . . unless the case presents exceptional circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (citations omitted). The factors that courts should consider when determining whether exceptional circumstances exist that merit the appointment of counsel include:

> (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

*Id.* at 213 (citations omitted). "We will overturn a decision of the district court on the appointment of counsel only if a clear abuse of discretion is shown." *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).

When the district court denied Lozano's motion for appointment of counsel, it explained that "[t]he type and complexity of the instant case is not

---

donated Kosher meals," he did "run[] the distribution of donations for Chabad Harvey Relief in the Houston area," in which capacity he "brought [the] donated Kosher meals to the Wallace Pack unit and provided a list of Jewish offenders that were going to receive the meals." Given that Rabbi Goldstein also testified that he was "under contract with the [TDCJ] to serve as the Department's head rabbi," on remand the district court should consider whether Lozano is entitled to relief on the ground that Rabbi Goldstein's actions constitute discriminatory state action. We do not express an opinion on the ultimate merits of this issue.

exceptional, and plaintiff has shown himself reasonably able to represent his own legal interests." The district court further stated that it would "reconsider the need to appoint counsel should this case be set for a jury trial." We cannot say that the district court clearly abused its discretion by denying Lozano's motion. However, given that after our first remand Lozano proved unable to cure the inadequacies in his original pleadings in a manner that complied with the district court's procedures and that this case, which is now being remanded for the second time, is becoming increasingly complicated, the district court may choose to reconsider whether counsel should be appointed to represent Lozano.

Because we are granting Lozano the relief that he seeks from us, his motion for appointment of counsel to represent him before this court is now moot.

## V.

For the foregoing reasons, the district court's order granting the defendants' motion for summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. Lozano's motion for appointment of counsel to represent him before this court is DENIED AS MOOT.