# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30339

———————

Cosea Bell,

*Plaintiff—Appellant*,

*versus*

State Prison Officials; State Prison Physicians;
Heather Cormier, *Nurse Practitioner*; Sarah Laurent; Merlin
Young; Dana Davis; Renee Holts; Mr. Veade; Mr.
Rachele; Wayne Millus; Kent Gremillion; Nikki
Chenevert; Marcus Myers; James M. LeBlanc; Spencer
Launey; Kaci Devillier; Johnathan Augustine; Diane
Williams,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:22-CV-1128

————————————————————————

Before Dennis, Willett, and Duncan, *Circuit Judges*.

Per Curiam:[*]

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30339

Plaintiff-Appellant Cosea Bell, proceeding *pro se*, appeals the district court's *sua sponte* dismissal of his suit against various officials at the Louisiana prison where he is incarcerated as well as the denial of several motions. We AFFIRM.

## I. Background

### A. Facts

Bell alleged five separate sets of factual allegations that are relevant to this appeal.

#### 1. Medical Care and Accommodations

Bell alleged that he sustained a back injury in 2002 and requires pain medication and a cane. His back pain increases with walking, standing, sitting, and riding. He can walk only short distances and must elevate his feet to control pain and swelling. Further, he is unable to lift, carry, push, pull, reach, handle things, stoop, or crouch, and he loses focus because of pain. He also suffers from paranoid schizophrenia, anxiety, post-traumatic stress disorder, "heat related illness," a sleeping disorder, and suicidal ideation, which require medication. Bell has a cardiac condition, elevated cholesterol, and a rapid heart rate from panic attacks that cannot be controlled by medication. These conditions allegedly interfere with his ability to work.

Bell alleged Defendant Nurse Practitioner Heather Cormier denied Bell's requests for a cane and back brace, a work restriction duty status, and "double portion diet meals for all 3 meals." In March 2022, Cormier refused him a medical assessment. Defendant Dr. Spencer Launey delayed treatment and refused to order that Bell be excused from work due to lower back pain.

Bell alleged mental health practitioners Defendants Kaci Devillier and Johnathan Augustine failed to administer the proper brand and dosage of his psychotropic medication, failed to give him a no work duty status, and failed

2

to render timely services. Additionally, Bell alleged that Devillier failed to make the proper diagnosis. In March 2022, Bell refused treatment by Augustine because "it was going to be the same denial of proper treatment," and Augustine afterward discontinued Bell's medication for his anxiety disorder.

### 2. Prison Conditions

Bell alleged that Defendant Warden Marcus Meyers, through negligence, caused Bell to experience ongoing exposure to environmental tobacco smoke (ETS) from other inmates smoking tobacco. Inmates put smokeless tobacco products and pencil lead on paper in dormitory microwaves to spark a fire and smoke rolled cigarettes. The exposure to ETS has caused Bell emotional stress because he has high cholesterol and a family history of heart disease; it has aggravated preexisting psychiatric and physical disorders and caused post-traumatic stress disorder; and he fears other "suspected disorders." He was treated by an eye doctor on July 12 and 13, 2022, for irritation and burning due to ETS exposure, but he needs ongoing blood tests and regular medical examinations to monitor the effects of the exposure.

### 3. Administrative Grievances

Bell alleged he filed administrative grievances alleging the denial of access to adequate mental health care, but they have not been resolved. Bell also alleged his grievances were denied without proper reasons.

### 4. Use of Force

Bell alleged Defendant Sergeant Sarah Laurent verbally assaulted Bell and intimidated him by using "minor force," which he described as grabbing his hand to pull his meal tray out of his hand "with hard force." The verbal assault caused Bell embarrassment and mental disturbance.

### *5. Prison Mail*

Bell alleged Defendant Warden Meyers violated Bell's right to privacy because correctional officers open his mail, and they negligently deliver it to other inmates according to a practice of delivering mail without confirming the identity of the recipient. He is now at risk of identity theft, as other inmates have remarked that they can now use Bell's name and inmate number to request offender records, obtain his social security number, and his banking account balance.

## B. Procedural History

Bell exhausted his administrative remedies by filing grievances complaining of the above issues. Bell then filed an initial complaint and three amended complaints. He alleged the above Defendants violated his rights under the First Amendment, Fourth Amendment, Eighth Amendment, the Fourteenth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection Clause, through 42 U.S.C. § 1983, as well as violations of the Americans with Disabilities Act (ADA). Bell also alleged Defendants Dr. Merlin Young, Colonel Renee Holts, Assistant Warden Gremillion, Warden Wayne Millus, Assistant Warden Nikki Chenevert, Warden Myers, and Secretary James LeBlanc are liable as supervisors.

The magistrate judge screened Bell's complaints under 28 U.S.C. §§ 1915(e), 1915A and recommended dismissing them for failure to state a claim. The magistrate judge also denied Bell's two motions to proceed *in forma pauperis*, his motion to file a fourth amended complaint, his motion to appoint counsel, and his motion to appoint a medical expert. Bell filed objections to the magistrate judge's recommendation of dismissal, and after an independent review of the record, the district judge overruled the objections, adopted the magistrate judge's report and recommendations, and entered final judgment dismissing all of Bell's claims. Bell timely appealed.

No. 23-30339

## II. Discussion

On appeal, Bell challenges the determination that he failed to state claims for relief and the denial of his two motion to proceed *in forma pauperis*, his motion to file a fourth amended complaint, his motion for appointment of counsel, and his motion for appointment of a medical expert. He also raises claims of judicial misconduct. We address each issue in turn.[1]

### A. Failure to State a Claim

This court reviews dismissals under § 1915(e)(2)(B)(ii) and § 1915A for failure to state a claim using the same *de novo* standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). Dismissal is appropriate where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While "pro se complaints are held to less

---

[1] On appeal, Bell has not briefed and has therefore forfeited his claims below that Defendants Dana Davis and Young denied him adequate mental health treatment, that Defendants Meyers and LeBlanc failed to evacuate him timely from exposure to toxic smoke from a fire near the prison, that Defendant Veade imposed excessive sentences for disciplinary convictions, and that Defendants Meyers, LeBlanc, Young, and Diane Williams retaliated against him. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (noting that, although pro se briefs are afforded liberal construction, even *pro se* litigants must brief arguments to preserve them). To the extent Bell argues claims for medical malpractice and intentional infliction of emotional distress, they are forfeited for inadequate briefing. *See Rollins*, 8 F.4th at 397.

stringent standards" than those drafted by a lawyer, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (first quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); and then quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

### *1. Medical Care*

Bell argues that Defendants Cormier and Launey violated the Eighth Amendment due to their negligent treatment of his back pain because they delayed and interfered with his treatment, failed to assess him, denied him a walking cane and back brace, and denied him "a no work duty restriction status." Bell also argues that Defendants Devillier and Augustine violated the Eighth Amendment due to their negligent treatment of his mental health in failing to prescribe specific medication, failing to prescribe a "no work restriction duty status for his mental disabilities," not informing him of appropriate risks or alternative treatments, and misdiagnosing him.

Officials infringe the Eighth Amendment's proscription against cruel and unusual punishment if they demonstrate "deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A prison official acts with deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994) (per curiam) (applying *Farmer* to claim of denial of medical care). Deliberate indifference is an "extremely high standard to meet."

6

*Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). Rather an inmate must allege facts showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Even assuming Bell has alleged a serious medical need, he has not alleged facts rising to deliberate indifference. Bell was evaluated for his back pain by Cormier seven times, Launey one time, and by nurses at other times. Bell receives physical therapy for his back pain every two weeks. Similarly, Bell was evaluated for his mental health three times each by Devillier and Augustine. Bell's allegations show a mere disagreement with treatment or, at most, negligence, which do not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346; *see also Lewis v. Goodwin*, 810 F. App'x 332, 333 (5th Cir. 2020) (per curiam) (finding no deliberate indifference in, among other issues, failing to provide a cane or walker); *Johnson v. Talley*, 243 F. App'x 10, 11 (5th Cir. 2007) (per curiam) (finding no deliberate indifference in failing to provide a knee brace, cane, or walking stick). Bell has failed to state a claim for deliberate indifference to serious medical needs.

### 2. Smoke Inhalation

Bell complains that Warden Meyers violated the Eighth Amendment by negligently allowing prisoners to smoke, contrary to the prison's no-smoking policy, which has exposed Bell to harmful secondhand smoke, causing cold-like symptoms, coughing, shortness of breath, migraine

headaches, chest pain, and eye and throat irritation. In order to plead an Eighth Amendment violation for exposure to unreasonably high levels of ETS, a prisoner must satisfy a two-prong test. *Helling v. McKinney*, 509 U.S. 25, 35–36 (1993). First, a prisoner must prove objectively that he is being exposed to unreasonably high levels of ETS. *Id.* at 35. Making this showing "requires more than a scientific and statistical inquiry into the seriousness of the potential harm" caused by exposure to ETS. *Id.* at 36. "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* Second, the prisoner must show subjectively that prison authorities demonstrated "deliberate indifference" to his plight, determined "in light of the prison's current attitude and conduct," including the adoption and enforcement of a no-smoking policy and the realities of prison administration. *Id.* at 36; *Fletcher v. Collins*, 55 F.3d 632 (5th Cir. 1995), 1995 WL 313933, at *1.

Even assuming Bell has satisfied the first element, he has not pleaded allegations rising to deliberate indifference. The prison has a no-smoking policy, and correction officers make rounds every twenty minutes. Although Bell argues these rounds are not frequent enough to catch prisoners smoking, considering the realities of prison administration, this schedule, without more, does not show deliberate indifference. Further, while Bell repeatedly calls Meyer negligent, deliberate indifference requires more than mere negligence. *See Wilson*, 501 U.S. at 305–06.

### 3. Use of Force

Bell argues that Defendant Laurent violated the Eighth Amendment by verbally abusing him and using "minor force" to remove his meal tray from his hand, causing emotional distress. To prevail on an Eighth Amendment claim of excessive force, a prisoner must show the unnecessary

and wanton infliction of pain. *See Hudson v. McMillian*, 503 U.S. 1, 5–7 (1992). The core issue is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). A court must consider "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321). Proof of significant injury is not required, but the absence of significant injury is relevant to whether the use of force was a wanton and unjustified infliction of harm. *Id.* at 7–8.

As an initial matter, "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). Turning to the alleged use of force, Bell does not allege he sustained any injury, much less significant injury, and his threadbare and conclusory allegations do not otherwise show the use of force was wanton or unjustified. Moreover, a § 1983 plaintiff may not recover psychological damages under the Eighth Amendment absent an allegation of more than *de minimis* physical injury. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); 42 U.S.C. § 1997e(e). Bell has failed to state a claim for excessive force.

### 4. Administrative Grievances

Bell complains that prison officials disregarded or denied the administrative grievances he filed regarding his exposure to ETS, Laurent's use of force, and the lacking medical care. However, this court does not recognize a protected liberty interest in either the adequacy or the result of prison administrative grievance procedures, and Bell's claims accordingly fail. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (per curiam).

No. 23-30339

### 5. *Interference with Mail*

Bell argues that he has stated a claim for invasion of privacy based on correctional officers negligently delivering his mail to other inmates according to a practice of delivering mail without confirming the identity of the recipient. Nonlegal mail, like the mail Bell focuses on here, may "properly be subjected to much greater control" in prisons than legal mail. *Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004) (citing *Guajardo v. Estelle*, 580 F.2d 748, 755 n.4, 756–59 (5th Cir. 1978)). We have held prison officials may "read all incoming and outgoing general correspondence" and even "turn[] letters over to the prosecutors if the jailers happened to find valuable evidence during their routine monitoring" without violating a prisoner's First Amendment rights. *Id.* (citing *Gassler v. Wood*, 14 F.3d 406, 408–10 (8th Cir. 1994)). The same is true of a prisoner's Fourth Amendment rights. *Id.* at 716 (citing *Stroud v. United States*, 251 U.S. 15, 21–22 (1919)). Considering this precedent, we conclude the less invasive practices Bell complains of do not rise to the level of constitutional violations either.

### 6. *Equal Protection*

Bell argues that he was denied equal protection because he was not treated the same as other inmates with disabilities. "To establish a Fourteenth Amendment equal-protection claim, [a plaintiff] 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). Bell has not asserted that any of the Defendants selected a particular course of action based on an intent to discriminate against him, and his conclusory allegations invoking a claim under the Equal Protection Clause are insufficient to state a claim for relief.

No. 23-30339

### *7. Supervisor Liability*

Bell argues Defendant Meyers is negligent for failing to train the correctional officers properly with respect to prison mail, Defendant Holts is liable because of a "lack of supervisor skills" with respect to Laurent's conduct, and Defendants Meyers and LeBlanc are liable for implementing an unconstitutional policy of deliberate indifference to prisoner needs. An underlying constitutional violation is required for supervisory liability. *See Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003); *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 90 (2023); *see also Pena v. Givens*, 637 F. App'x 775, 785–86 (5th Cir. 2015) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005), *abrogated on other grounds by Kingsley v. Hendrickson*, 57 U.S. 389 (2015)). As explained above, Bell failed to state a claim for any constitutional violation. Therefore, his supervisory liability claims fail as well.

### *8. Americans with Disabilities Act*

Bell argues the failure of Cormier and Launey to provide a cane, a back brace, and a work restriction status for his back condition, and the failure of Devillier and Augustine to provide a work restriction status for his mental health conditions violated the ADA. The ADA applies to state prisons and prisoners. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). "A plaintiff states a claim for relief under Title II of the ADA if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).

No. 23-30339

The district court determined the third element was lacking because Bell has not shown he was denied treatment or services because of a disability. "[A] plaintiff can establish the third prong of the prima facie case—discrimination 'by reason of his disability'—by showing that the defendants have failed to make reasonable accommodations." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017)). "A plaintiff proves a failure to accommodate by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Id.* (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020)). "To satisfy the knowledge requirement, the entity must understand the limitations a plaintiff experienced as a *result* of his disability." *Id.* (citing *Windham*, 875 F.3d at 236). "The burden falls on the plaintiff to identify the disability, the limitation, and to request an accommodation in 'direct and specific' terms," and "[w]hen a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* (quoting *Windham*, 875 F.3d at 237).

We agree with the district court that Bell has failed to state a claim under the ADA. Bell attached as exhibits to his complaints several health care request forms and other documentation, which we consider as "part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, the exhibit and not the allegation controls." (quotation omitted)). The allegations in Bell's complaints—particularly when viewed together with the attached exhibits—are insufficient to establish discrimination "by reason of his disability," the third element of an

12

No. 23-30339

ADA claim. Bell needed to show that the prison knew about his disabilities and limitations. *See Smith*, 956 F.3d at 317. To show the prison's knowledge, moreover, Bell had to demonstrate that the prison understood Bell's limitations were *as a result of* his disability. *See Valentine*, 993 F.3d at 290. Noticeably absent from Bell's complaints and attached documentation are any allegations that the prison officials *discriminated* against him by declining to treat his limitations that they *knew* were *as a result* of his alleged disabilities. *See id.* For example, in his health care request form submitted in February 2021, Bell stated only that he needed to "talk to the doctor for a no duty status," that he could not "push, pull, bend, or lift," and that he had "severe lower back pain." Bell did not connect his symptoms to any alleged disability, however. For all the prison knew, Bell's symptoms occurred as isolated incidents not implicating his alleged disability at all. The ADA is a *discrimination* statute, not merely a recourse-for-failure-to-treat statute. *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."). In sum, the district court did not err when dismissing Bell's ADA claim.[2]

## B. Denial of Motions

Bell appeals the denial of his motion to proceed *in forma pauperis*, his motion to file a fourth amended complaint, his motion for appointment of counsel, and his motion for appointment of a medical expert. We review each

---

[2] In addition, Bell neither alleges nor argues that his disabilities, limitations, and reasonable accommodations were "open, obvious, and apparent" to the prison's agents. *See Valentine*, 993 F.3d at 290; *cf. Windham*, 875 F.3d at 237 (citing *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197–98 (10th Cir. 2007) (reasonable jury could infer that deaf arrestee's inability meaningfully to participate in his probable-cause hearing was sufficiently obvious to put officers on notice of need for hearing aid)). Bell thus forfeits any arguments that this backstop applies. *Rollins*, 8 F.4th at 397; *Yohey*, 985 F.2d at 224–25.

of these denials for abuse of discretion. *Gibbs v. Jackson*, 94 F.4th 566, 568 (5th Cir. 2024) (*in forma pauperis*); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) (leave to amend); *Lozano v. Schubert*, 41 F.4th 485, 492 (5th Cir. 2022) (appointment of counsel); *Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008) (appointment of medical expert).

### 1. In Forma Pauperis

Bell appeals the district court's denial of his two motions to proceed *in forma pauperis* in the district court. Bell did not adequately brief this issue because he offers no explanation for why the district court erred beyond brief conclusory statements. *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008); *Thomas v. Grundfos*, No. 20-20505, 2021 WL 4693055, at *1 (5th Cir. Oct. 7, 2021) (unpublished) (per curiam). But even assuming this argument is preserved, the district court did not abuse its "wide discretion" in denying Bell's applications to proceed *in forma pauperis*, given the account balances and spending patterns evident from Bell's prison account statements around the time he moved for *in forma pauperis* status. *See Flowers v. Turbine Support Div.*, 507 F.2d 1242, 1244 (5th Cir. 1975), *superseded on other grounds by statute as recognized in Thompson v. Drewry*, 138 F.3d 984, 985–86 (5th Cir. 1998); *see also Williams v. Estelle*, 681 F.2d 946, 947 (5th Cir. 1982) (per curiam); *Godwin v. Garland Indep. Sch. Dist.*, 988 F.2d 1210, 1993 WL 82071, at *1 (5th Cir. 1993) (unpublished) (per curiam).

### 2. Fourth Amended Complaint

Bell challenges the district court's denial of his motion to file a fourth amended complaint. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In other words, leave to amend should be liberally granted, when the plaintiff might be able to state a claim based on

the underlying facts and circumstances." *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023) (citing *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009)). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citing *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987)).

Bell sought to allege additional facts relating to his claims for violations of the ADA and for denial of medical care in violation of the Eighth Amendment. The district court did not abuse its discretion in denying amendment of these claims as futile because amendment would not have cured the deficiencies explained above. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted) (stating an amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted").

### 3. Appointment of Counsel

Bell challenges the district court's denial of appointment of counsel. "A civil rights complainant has no right to the automatic appointment of counsel." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (citations omitted). A district court, in its discretion, may appoint counsel to represent a civil rights plaintiff "if doing so would advance the proper administration of justice." *Id.* at 213. However, appointment of counsel is not required "unless the case presents exceptional circumstances." *Id.* at 212 (citing *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982)). Whether exceptional circumstances warrant the appointment of counsel depends on (1) "the type

and complexity of the case"; (2) the indigent's capability to present his case adequately; (3) the indigent's capability to investigate his case adequately; and (4) the type of evidence that will be presented by both parties. *Id.* at 213 (citations omitted). Bell's case is not complex, Bell capably presented his case as demonstrated by his voluminous filings, and trial concerns were not implicated. The district court did not abuse its discretion in denying appointment of counsel. For similar reasons, Bell's motion to appoint counsel on appeal is DENIED. *See Cooper v. Sheriff, Lubbock Cnty.*, 929 F.3d 1078, 1084 (5th Cir. 1991).

### *4. Appointment of Medical Expert*

Bell challenges the district court's denial of his motion to appoint a medical expert under Federal Rule of Evidence 706. "Rule 706 contemplates the appointment of an expert to aid the court." *Hannah*, 523 F.3d at 600 (citation omitted). Bell, on the other hand, seeks appointment of an expert for his own benefit. Further, this case never progressed past screening under § 1915A. Under these circumstances, the district court did not abuse its discretion in denying appointment of an expert. *See id.*; *see also Pedraza v. Jones*, 71 F.3d 194, 197 n.5 (5th Cir. 1995).

### C. Judicial Misconduct

Finally, Bell makes vague claims that the magistrate judge and district judge committed misconduct by failing to rule on several motions and "abandon[ing] [their] independent judgments" on those they did rule on. Bell fails to provide a legal basis to support his claims of misconduct. In any event, the record shows the magistrate judge and district judge ruled on all motions. To the extent Bell's argument may be liberally construed as asserting judicial bias, a court's ruling will not support a claim of bias unless it reveals an opinion based on an extrajudicial source or demonstrates such a high degree of antagonism as to make a fair judgment impossible. *Liteky v.*

No. 23-30339

*United States*, 510 U.S. 540, 555 (1994); *see Hastey v. Bush*, 100 F. App'x 319, 320 (5th Cir. 2004). That is not the case here.

## V. Conclusion

The judgment of the district court is AFFIRMED.

James L. Dennis, *Circuit Judge*, concurring in part, dissenting in part:

I concur in the majority opinion, except as to the conclusions that Bell failed to state a claim under the Americans with Disabilities Act (ADA) and that amendment to this claim would have been futile. "In reviewing a dismissal for failure to state a claim, this court 'must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor.'" *Watson v. Basse*, 539 F. App'x 432, 432 (5th Cir. 2013) (quoting *Elsensohn v. Saint Tammany Par. Sheriff's Off.*, 530 F.3d 368, 371–72 (5th Cir. 2008)). Furthermore, we must construe *pro se* complaints liberally. *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022). In affirming dismissal of Bell's ADA claim and the related denial of leave to amend, the majority starkly departs from these standards. At this early stage of the litigation, Bell has easily met his burden.

\*    \*    \*

As the majority explains, "a plaintiff can establish the third prong of the prima facie case [under the ADA]—discrimination 'by reason of his disability'—by showing that the defendants have failed to make reasonable accommodations." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017)). "A plaintiff proves a failure to accommodate by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Id.* (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020)). "To satisfy the knowledge requirement, the entity must understand the limitations a plaintiff experienced as a *result* of his disability." *Id.* (citing *Windham*, 875 F.3d at 236). "The burden falls on the plaintiff to identify the disability, the limitation, and to request an accommodation in 'direct and specific' terms," and "[w]hen a plaintiff fails to request an accommodation in this manner, he can prevail only by showing

that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* (quoting *Windham*, 875 F.3d at 237).

For example, in *Epley v. Gonzalez*, 860 F. App'x 310, 314 (5th Cir. 2021), we reversed the district court's § 1915(e)(2) dismissal of a former prisoner's *pro se* suit that included a claim that prison officials violated the ADA. The prisoner suffered from post-traumatic stress disorder and a traumatic brain injury. *Id.* at 311. He alleged that the defendants forced him into a multi-occupancy cell despite his documented single-cell medical restriction, which triggered his psychiatric disorder, and that they transported him in a prison bus rather than a medical van for medical treatment for injuries he suffered after the placement. *Id.* at 312. With respect to the ADA's third element, we noted that the prison's failure "to make reasonable accommodations for a plaintiff's disability" would suffice, and that "the lack of disability-based animus is irrelevant to this analysis." *Id.* at 314. The prisoner had alleged prison officials knew of his single-cell restriction because it was documented in his medical records, and they knew of his need for medical transportation because he arrived at the prison in a medical van five days earlier. *Id.* We held that the prisoner had sufficiently pleaded that the defendants knew of his disabilities and needs but ignored them by failing to give him safe housing and appropriate transportation. *Id.*

In this case, Bell has repeatedly alleged throughout his complaints that he informed the prison of his disabilities, the resulting limitations, and his requested accommodations. In one complaint he alleged Defendant Cormier violated the ADA when she denied his requests for a walking cane, back brace, and no work duty status to accommodate his back pain. He alleged:

> I was seen/evacuated by Heather Cormier continually and I was denied proper treatment. I also made a complaint on my medical conditions because it affect my daily activities. . . . I

No. 23-30339

complaint of chronic low back pain and substantial pain. It indicates medical needs is serious. My needless pain is actionable even if there is no permanent injury. I still need a walking cane and back brace. I, cosea bell have inability to sit and discomfort in sitting. I can not push, pull. bend, lift of hold and swing working tools thats over 5 pounds (shovel & garden hoe) I still need a walking cane and back brace to assist with balance, pressure relief, reduce spasticity, increase stamina, and improve respiratory. I am qualify under the (ADA) americans with disabilities act. I, cosea bell is possible discriminated and prejudice against by the public entity with denial of proper medical care.

In another complaint Bell described his condition and his visits with Cormier in more detail:

[D]efendant Heather Cormier continued to refuse me of a back brace & walking cane from several medical sick call requests. Defendant fail to complete a medical restriction statement noting im required for a back brace & walking cane for severe chronic low back pain, damaged disc, pinch nerve and muscle spasms, and (continue of inflammation in joint) from history of back injury, etc. . . . i establish im unable to sit, stand or walk for no more than ten minutes during the day. i need a walking cane to ambulate and need the ability to elevate my legs as necessary. my walking ability limited to short distances. . . . i cant lift, carry, push, pull, reach, handling, stoop or crouching. . . . Defendant Heather Cormier knew and should have known that i am disable. Defendant was aware that i suffered from paranoia, anxiety, heat related illness, sleeping disorder, and chronic back pain, . . . . i had primary care physicians from society that medical order provided that i be permanently prescribed to a walking cane. . . .

No. 23-30339

Bell also attached to one of his complaints a health care request form,[1] which documented one of his requests for no duty work status:

> i need to talk to the doctor for a no duty status i cant push, pull, bend or lift. i have severe lower back pain a fracture disc.

Bell provided similarly detailed allegations regarding his mental condition. In one complaint he alleged Defendants Devillier, Augustine, and Davis violated the ADA when they denied his request for no work duty status to accommodate his mental condition:

> l seen and was evacuated by kaci devillier on dates: 4-2020, 7-2020, 4-8-2021. I requested for a documented no work restriction duty status, due to my mental conditions and disorders, which prevents me from working in prison. I, cosea bell was denied of a no work restriction duty status by defendant, kaci devillier. . . . l was seen and evacuated by johnathan augustine on dates: 9-23-2021, 3-18-2022, 9-2022 my request was for a documented no work restriction duty status for my mental condition and disorders. I was denied of a no work restriction duty status by johnathan augustine. I was intimidated and force to work in prison by johnathan augustine. He conduct violated my (ada) americans with disabilities act rights by forcing the mentally disable to work and I have mentally illness and disorders which permanently prevents me from working in prison and in public. . . . I wrote a urgent letter to dana davis to request again for a no work restriction duty status and a request to see a mental health psychiatrist. My complaint was that I was having and under the influence of extreme mental and emotional stress and I could not work in and outside of the prison premises because im not in the right state of mind and I need a no work restriction duty status. My

---

[1] Exhibits attached to a complaint are part of the complaint and may be reviewed in determining whether a plaintiff has stated a claim for relief. *See, e.g.*, *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

request and complaint was denied, disregarded and delayed for 30 days with unreasonable excuses.

In another complaint Bell described his condition and his visits with Devillier and Augustine in more detail:

> [I] have mental health clinic history records. i was given a trial on Zoloft medication for paranoid schizophrenic it was discontinued and changed to pazil because it relates to paranoia management. Defendant Kaci Devillier denied and refused to write documentation of a no work restriction duty status. . . . i'm unable to perform mental demands of work activities such as understanding, remembering, maintain concentration, persistence, pace, carry out instructions, responding appropriately to supervision and co-workers, work pressures in a work setting. . . . Defendant, Jonathan Augustine fail to treating and permitting the treatment of the diagnosed problem of paranoid schizophrenic with substandard methods. i identified and describe the behavior symptoms for medicine and treatment of my mental conditions. . . . Defendant Jonathan Augustine denied to write documentation of a no work restriction duty status. . . . i cant concentrate, i suffer from paranoid schizophrenia im paranoid around other inmates. . . . Defendant fail to understand that im unable to perform mental demands of work activities such as understanding, remembering, maintain concentration, persistence, pace, carry out instructions, responding appropriately to supervision, co-workers, work pressures in a work setting. . . .

Construing Bell's complaints in the light most favorable to him, I cannot imagine what more he needed to allege to show denial of a reasonable accommodation. He repeatedly alleged that he went to prison officials;

informed them of his back pain and mental disorders;[2] explained the limitations these conditions caused, which were also documented in his medical records; and requested a cane, a back brace, or no work duty status, as the case may be. *See Valentine*, 993 F.3d at 290. Bell has alleged just as much notice, if not more, than the prisoner in *Epley*. *See* 860 F. App'x at 314. At this early stage of the litigation, construing Bell's complaint in the light most favorable to him—as required—Bell has easily met his burden.

Further, amendment to Bell's ADA claim would not have been futile. Bell sought to supplement his ADA claim with additional allegations regarding his disabilities and limitations. As explained above, Bell's ADA claim is not meritless, and his amendment would have further fleshed out his conditions and the denial of accommodations. *See Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023) (stating "leave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances").

I respectfully dissent.

---

[2] Whether these conditions are actually qualifying disabilities goes to the first element of an ADA claim, which the district court did not address. *See Valentine*, 993 F.3d at 289–90.